IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BARBARA GILBERT,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | Civil Action Number: |
| | ) | CV-01-C-3314-S |
| **BUFFALO ROCK COMPANY, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before this Court is Defendant's Motion For Summary Judgment.  For the reasons stated herein, the Motion will be granted in part and denied in part.

## <u>STATEMENT OF THE FACTS</u>

Plaintiff Barbara Gilbert ("Gilbert") brings this employment discrimination action against Defendant Buffalo Rock Company, Inc. ("Buffalo Rock").  Specifically, Plaintiff alleges gender discrimination, race discrimination, and unlawful retaliation in violation of Title VII, section 1981, and the Equal Pay Act ("EPA").  This case also involves a claim under the Fair Labor Standards Act ("FLSA") as well as a state law invasion of privacy claim.

On September 20, 1999, Plaintiff began working for Buffalo Rock as a Senior Applications Analyst in the Human Resources Department. (Gilbert, at 29, 41, 145.)  She was interviewed by Jim Woods ("Woods"), a project manager for the implementation of Oracle[1]

---

[1] Oracle refers to a collection of financial, accounting, payroll, and other human resource applications (Gilbert, at 270-71.)

1

applications and for the implementation of the sales and distribution management system ("SDMS"); she was also interviewed by Bobby Wallace ("Wallace"), a report writer, with coordinator duties for the SDMS project.[2] (Wallace, at 7, 19; Woods, at 35-37; Gilbert, at 107, 157.) Thereafter, Woods hired Plaintiff. (Gilbert, at 29, 40-41; Woods, at 61; Wallace, at 22.)

Plaintiff was offered forty-one thousand, five hundred dollars ($41,500.00) per year to accept the job at Buffalo Rock. (Gilbert, at 40, 43, 76; Woods, at 71-73; Wallace, at 24.)  She was told by Woods that this was the top pay for the position. (*Id.*) Additionally, Plaintiff was told that the job did not require her to be placed on-call or to work weekends. (*Id.*) Plaintiff's duties at Buffalo Rock included creating manufacturing and distribution reports and parent company reports using Business Objects and Crystal.[3]

In October 1999, Ram Gorre ("Gorre") was hired by Buffalo Rock as a contractor to implement the Oracle applications and to create, design, and modify Oracle reports. (Woods, at 79-83; Gorre, at 6, 7, 68-69.) Gorre's employer, Accelerated Solutions, set his annual salary at sixty-two thousand dollars ($62,000.00). (*Id.*) In July 2000, Gorre was hired as a permanent employee at Buffalo Rock in a similar position as that of Plaintiff. (Gilbert, at 71; Woods, at 73, 152, 176; Wallace, at 41-42, 45, 47-48.) At that time, Buffalo Rock set Gorre's annual salary at sixty-five thousand dollars ($65,000.00). (Gorre, at 21-22.)

During Plaintiff's employment with Buffalo Rock, the company used two computer systems, Oracle and VMS. (Gilbert, at 78-79.) The Human Resource Department used Oracle to

---

[2]    In January 2000, Woods was promoted to General Manager of the IT Department at Buffalo Rock, and Wallace was promoted to manager of information systems, and, in July 2000, IT Director. Plaintiff's immediate supervisor after these promotions was Wallace, who reported to Woods. (Woods, at 9, 56; Wallace, at 19-20; Gilbert, at 46-47.)

[3]  Business Objects and Crystal are software Buffalo Rock uses that pull information from a database to create a report. (Gilbert, at 44.)

compile its various reports, and VMS was used to track inventory, distribution, and billing. (*Id.*) While both Plaintiff and Gorre were Senior Application Analysts, Gorre's duties were more specific to the Oracle application, and Plaintiff's duties were more specific to the VMS system used in sales and distribution. (Gilbert, at 71; Gorre, at 7-8, 17-19, 21, 33, 36-37, 69-70; Woods, at 73, 152, 176; Wallace, at 41-42, 45, 47-48.)  In December 2000, Plaintiff inquired about the disparity in the salaries of Gorre and herself. (Gilbert, at 70-74, 106.)  Woods yelled at Plaintiff and explained that the disparity was because of Gorre's experience with Oracle. (Gilbert, at 72-73.)  However, when Plaintiff asked Woods if the difference was because Gorre was male, Woods responded, "Yes, damn it, that's exactly what it is." (Gilbert, at 73-74.)

In January 2000, Plaintiff received a pay raise up to forty-five thousand dollars ($45,000.00). (Gilbert, at 50; Woods, at 147-48.)  At this time, Plaintiff began supervising three employees at Buffalo Rock. (*Id.*)  Late in 2000, Plaintiff's responsibilities increased as Buffalo Rock changed its computer system from an NT operating system to a VMS, V-5.[4] (Gilbert, at 216.)  Because Plaintiff was more experienced in VMS than any other employee, the additional V-5 work required Plaintiff to be placed on-call, resulting in her working an excessive amount of overtime. (Gilbert, at 50-52, 56, 212-216; Woods, at 99, 147-48, Wallace, at 71-73.)  To address the needs of after-hours users, Woods released Plaintiff's home telephone number. (Woods, at 137-38.)

Throughout Plaintiff's employment with Buffalo Rock, Woods yelled at Plaintiff and made derogatory comments to her. (Gilbert, at 57-62; Woods, at 202; Wallace, at 64-66.)  Moreover, Woods would constantly direct offensive jokes and "dumb-blonde" jokes in hateful

---

[4] V-5 is an operating system that tracks inventory, distribution, and billing. (Gilbert, at 270.)

tones toward Plaintiff. (Gilbert, at 63-65, 131-133.)  To be sure, Plaintiff apparently participated in some of the offensive and "dumb-blonde" joke-telling. (Gilbert, at 132-34, 256-57.)

Late in 2000, Plaintiff complained to Roger Barker ("Barker"), vice-president and chief financial officer at Buffalo Rock about Woods yelling at her and having to work excessive hours on-call. (Gilbert, at 76-77.)  On February 5, 2001, Plaintiff filed an official complaint with Bill Moore ("Moore"), the company's general manager of corporate services, about Woods' conduct and her concerns that she was unfairly paid less than Gorre. (Gilbert, at 89, 94.)  However, Moore did not document the complaint but notified Barker of Plaintiff's grievances. (Gilbert, at 89-90.)  On February 6, 2001, Barker held a meeting with Plaintiff, where again he heard Plaintiff's complaints. (Gilbert, at 109-110; Barker, at 30-31.)  At that time, Barker promised he would investigate. (*Id.*)  However, Plaintiff was never informed of the outcome of the investigation. (*Id.*)

On March 20, 2001, Plaintiff was called into a meeting with Adriene Jones Crane, Woods, and Wallace, and at the meeting she was terminated. (Gilbert, at 146.)  Woods told Plaintiff that she was being terminated because she accessed the email account of Ronnie Harrison ("Harrison"), an administrative assistant at Buffalo Rock. (Gilbert, at 148.)  However, Plaintiff denies having accessed Harrison's computer system. (Gilbert, at 155-56, 159.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).  The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,' if any, which the moving party believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, the court must view the facts in a light favorable to the non-moving party.[5] *See, e.g., Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir. 1997). The Eleventh Circuit has held that evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact. *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

## ANALYSIS

### A. Discrimination based on Race or National Origin

Plaintiff is a white woman, who alleges race discrimination by Defendant Buffalo Rock in her complaint. (Compaint, at 9.) However, Plaintiff concedes that Defendant is entitled to summary judgment on this claim pursuant to 42 U.S.C. § 1981. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, at p. 1. n.1.) Accordingly, since plaintiff has not provided evidence of a genuine issue of material fact that she was discriminated against on the basis of race, her race discrimination claim will be dismissed.

### B. Sexual Harassment

Sexual harassment is a form of sex discrimination prohibited by Title VII. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (stating that "the phrase 'terms, conditions,

---

[5] "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' . . . and draw 'all justifiable inferences . . . in his favor . . . . ' " *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).

or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women'").

There are two types of sexual harassment cases: (1) quid pro quo, which are "based on threats which are carried out" or fulfilled, and (2) hostile environment, which are based on "bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751 (1998).

The Eleventh Circuit set forth in *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir.1999), the elements that an employee must establish to support a hostile environment claim under Title VII based on harassment by a supervisor. An employee must establish:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Id.* at 1245. n11

The fourth element – that the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment" – is the element that tests the mettle of most sexual harassment claims. Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). This requirement is regarded "as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace – such as male-on-male horseplay or intersexual flirtation – for discriminatory 'conditions of employment.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998); *see also Gupta v. Fla. Bd. of Regents*, 212 F.3d at 582-83.

To the question of the fifth element – whether there is a basis for holding Defendant liable for harassing Plaintiffs – the Eleventh Circuit has held that an employer is strictly liable for the harassing acts of its employee if: (1) the employee was the victim's supervisor, and (2) the supervisor took a tangible employment action against the victim as a result of the harassment. *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509-10 (11th Cir. 2000). Apart from strict liability, an employer can be found liable for the harassing acts of the victim's supervisor even if the supervisor did not take a tangible employment action against the victim, unless it asserts the affirmative defense established by *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998) (holding employer not liable where it "exercise[s ] reasonable care to prevent and correct promptly any . . . harassing behavior," and the victim "unreasonably faile[s] to take advantage of any preventive or corrective opportunities provided by [the employer] or to avoid harm otherwise"). Moreover, an employer can be liable for harassment by its non-supervisory employees if the employer had actual notice or constructive notice of the harassment and failed to remedy the situation. *See id.*

The law regarding hostile work environments entitles employees to a workplace free from "discriminatory intimidation, ridicule, and insult" motivated by the employees' membership in a protected class. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21-22 (1993).

In determining whether a hostile employment environment was created, courts have considered a variety of factors, including, "the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work." *Edwards v. Wallace State Community College*, 49 F.3d 1517, 1521-22 (11th Cir. 1995); *see also Mendoza*

*v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999); *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 867 (11th Cir. 1997).

In the case at bar, Plaintiff alleges the "hostile environment" form of sexual harassment. While the conduct that Plaintiff encountered was perhaps annoying, it, nevertheless, falls short of the threshold of Title VII liability. Plaintiff admits in her deposition that she participated in the "dumb blonde" jokes which she now claims created a hostile environment. Moreover, even after drawing all inferences in Plaintiff's favor, none of the alleged conduct in this case reaches the level of severity or pervasiveness required under Eleventh Circuit law. *See Mendoza*, 195 F.3d at 1245, 1252 (noting Title VII is not a "civility code," designed to "purge the workplace of vulgarity"). Accordingly, this Court is compelled to grant Defendant's summary judgment on Plaintiff's sexual harassment claim.

## C. Retaliation

A *prima facie* retaliation case is established by showing that (1) the employee engaged in statutorily protected expression; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the employee's protected activity and the employer's adverse action. *See Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001). After the Plaintiff makes such a showing, the burden then shifts to the Defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. *Sullivan v. National R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1991).

Plaintiff has established *prima facie* evidence of retaliation in this case. Plaintiff complained about allegedly hostile working conditions and a pay disparity between her and Gorre. Both of these complaints are protected activity under Title VII and the EPA. Plaintiff's

forced resignation undeniably constitutes an adverse employment action by Buffalo Rock.
Furthermore, Plaintiff has established a causal connection between her complaints and her
discharge because Woods and Wallace certainly knew of her prior complaints at the time of her
termination. *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.
1995) ("To establish the causal connection element . . . the plaintiff must generally show that the
decision maker was aware of the protected conduct at the time of the adverse employment
action.").

However, Buffalo Rock has offered a legitimate, non-retaliatory reason for Plaintiff's
dismissal.  Defendant states that Plaintiff was forced to resign because she engaged in
unauthorized access of another employee's computer system, a violation of company policy.
Even though Plaintiff claims that she did not violate the company policy, there is no evidence
that Buffalo Rock's proffered reason is pretext.  *See Elrod v. Sears, Roebuck & Co*, 939 F.2d
146, 1470-71 (11th Cir. 1991) (explaining that the denial of a company policy violation is
insufficient to show pretext as long as employer had a good faith belief that employee had
engaged in misconduct).  Because Plaintiff has offered no evidence that Buffalo Rock's
legitimate, non-retaliatory reason is pretext, her retaliatory discharge claim is due to be
dismissed.

## D.  Fair Labor Standards Act (FLSA)

Under the FLSA, an employee is exempt from the Act's overtime requirements[6] if that
employee

---

[6] "Except as otherwise provided in this section, no employer shall employ any of his
employees . . . for a workweek longer than forty hours unless such employee receives
compensation for his employment in excess of the hours above specified at a rate not less than
one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1) (1992).

is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is–(A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or systems functional specifications; (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user system design specifications; (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or (D) a combination of duties described in subparagraphs (A), (B), (C) the performance of which requires the same level of skills.

29 U.S.C. § 213(a)(17) (Supp. 2003). Moreover, the Department of Labor regulations work in conjunction with the statute. In addition to the statutory requirements, the regulations further provide that to be considered a computer professional and, therefore, exempt : (1) the employee's work must require "constant exercise of discretion and judgment in its performance;" (2) the work must be "predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work);" (3) the employee must "not devote more than 20 percent of [her] hours worked in the workweek to activities which are not an essential part and necessarily incident to the work described" in the previous requirements; and (4) the employee must be "compensated for services on a salary . . . of not less than $250 per week." 29 C.F.R. § 541.3 (2003).

Plaintiff meets the requirements set forth under the FLSA and the accompanying regulations as a computer professional and, therefore, is exempt from the Act's overtime requirements. Indeed, Plaintiff's work at Buffalo Rock was as a computer analyst. Additionally, Plaintiff's own testimony demonstrates the degree of expertise she has in the computer field and the importance of her work at Buffalo Rock. Finally, Plaintiff was paid a salary of $45,000 per year, more than the minimum weekly amount enumerated in the regulations. For these reasons, Plaintiff's claim under the FLSA will be dismissed.

**E.  Equal Pay Act (EPA)**

To establish a *prima facie* claim of disparate pay under the EPA, the plaintiff must show that the "employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 801 (11th Cir. 1992) (citations omitted).

It is undeniable that Plaintiff and Gorre performed *similar* jobs at Buffalo Rock, for both provided support services for the company's computer systems.  Likewise, it is undisputed that the two employees' salaries were different; Plaintiff earned $45,000 per year, while Gorre earned $65,000 per year.  To be sure, Defendant maintains that the disparity in wages was due to Gorre's different skills and responsibilities.  However, this Court finds Wood's statement that Gorre was paid more because he is male sufficient to create a genuine issue of material fact. Therefore, Plaintiff's claim under the EPA will survive summary judgment.

**F.  Invasion of Privacy**

Under Alabama law, there are four types of invasion of privacy: (1) the intrusion upon the plaintiff's physical solicitude or seclusion, (2) publicity which violates the ordinary decencies, (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye, and (4) the appropriation of some element of the plaintiff's personality for commercial use. *Johnson v. Wal-Mart Stores, Inc.*, 987 F. Supp. 1376, 1396-97 (M.D. Ala. 1997).   To maintain a seclusion action, a plaintiff needs to show an intrusion into her private activities in such a manner as to "outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Mills v. Wex-Tex Industries, Inc.*, 991 F. Supp. 1370, 1384 (M.D. Ala. 1997).

In the instant case, Plaintiff alleges the seclusion theory of invasion of privacy.  Plaintiff maintains that Defendant invaded her privacy by publishing her home telephone number without

her permission.  Resolving all doubts in Plaintiff's favor, this Court finds that there are genuine issues of material fact on Plaintiff's invasion of privacy claim, and, therefore, Defendant is not entitled to summary judgment on this claim.

## G.  Constructive Discharge

A *prima facie* case of constructive discharge is established if one may reasonably infer discrimination from the un-rebutted facts. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988).  Plaintiff must show "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Rivera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994).  If such is shown, the burden passes to the defendant to rebut by showing discharge occurred for a legitimate reason. *Id.*

In this case, Plaintiff has demonstrated *prima facie* evidence of a constructive discharge claim.  This Court is satisfied that Plaintiff's forced resignation is tantamount to a constructive discharge.  However, as mentioned above, Defendant has sufficiently rebutted Plaintiff's *prima facie* case by showing that Plaintiff violated a company policy.  Accordingly, summary judgment is appropriate with regards to Plaintiff's claim for constructive discharge.

## CONCLUSION

For the reasons discussed herein, this Court will **GRANT** in part and **DENY** in part Defendant Buffalo Rock's Motion for Summary Judgment by separate order.

DONE this _23d_ day of September, 2003.

Chief United States District Judge
U.W. Clemon